IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MATTHEW T. FITZGERALD,

                                OPINION AND ORDER

             Plaintiff,

                                 15-cv-135-bbc

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is plaintiff Matthew T. Fitzgerald's second appeal relating to his claim under the Social Security Act, 42 U.S.C. § 405(g), for disability benefits and supplemental security income.  Plaintiff alleges that he has been disabled since July 1, 2010 as a result of a number of impairments, including degenerative disc disease, coronary artery disease, pulmonary fibrosis and lateral epicondylitis of the left elbow.  On June 7, 2013, he appealed an October 3, 2011 administrative decision denying him benefits, arguing that the administrative law judge had made a number of errors, including improperly assessing his credibility and the opinion of his treating physician and failing to resolve a conflict in the vocational expert's testimony.  Dkt. #1, case no. 13-cv-405-bbc.  Because I agreed with most of plaintiff's arguments, I remanded the case for further proceedings.  Dkt. #20, case no. 13-cv-405-bbc.

      On remand, the administrative law judge held a second hearing and received additional medical evidence.  Although the administrative law judge determined that plaintiff

became disabled when he turned 50 years old on October 9, 2014, he found that before that time, plaintiff could have performed work as a machine tender, office worker and video surveillance monitor.  AR 839-40.  In the current appeal, plaintiff argues that he is entitled to an award of benefits for the period July 1, 2010 to October 8, 2014, because the administrative law judge erred by (1) making an improper credibility assessment; (2) giving inadequate weight to the opinion of plaintiff's treating physician; (3) failing to resolve conflicts between the Dictionary of Occupational Titles and the vocational expert's testimony; and (4) relying on vague and unsupported vocational expert testimony.

For the reasons discussed below, I conclude that the administrative law judge gave an adequate explanation of his findings and provided good reasons for the findings, which are supported by substantial evidence in the record.  Accordingly, I am affirming the administrative law judge's decision.

RECORD FACTS

A.  Medical Record

Plaintiff Matthew Fitzgerald was born on October 9, 1964, making him 50 years old at the time of his most recent administrative hearing on October 16, 2014.  AR 882.  In July and August 2010, he began experiencing sharp chest pain and a dull steady pain that radiated into his right arm.  AR 349.  In September 2010, he also complained of pain between his shoulder blades in his upper back that radiated to his left elbow and caused numbness and tingling in his left fingers.  AR 331-32, 335.  Plaintiff saw Dr. Marty Mozena

on September 29, 2010 for an initial appointment related to his chest and back pain.  AR 324.  He had tenderness to palpation in his cervical and thoracic spine and a decreased range of motion in his neck upon rotation to the left and flexion.  AR 326.  Dr. Mozena prescribed pain medications and ordered a magnetic resonance imaging study.  Id.  Plaintiff remained in significant pain and reported on October 4, 2010, that the pain medications were ineffective.  AR 320.

Plaintiff returned to Dr. Mozena for a followup visit on October 15, 2010.  AR 312.  He had tenderness to palpation in the lower cervical vertebrae and was unable to abduct past 80 degrees with decreased hand grip on the left and difficulty touching his thumb to each finger tip because of pain in his elbow.  AR 312-14.  Dr. Mozena continued him on pain medications and referred him to Dr. Dopf, a spinal specialist.  Id.  Three days later, plaintiff spoke with someone in Dr. Dopf's office, who told him that "if" a patient needed spinal fusion, he would have to be nicotine free in order to be put on the surgical schedule.  AR 309.  Plaintiff asked for a referral to a different specialist because he said that he was unable to quit smoking as a result of stress.  AR 304, 307.  Dr. Mozena explained that all surgeons would recommend that he quit smoking, but he encouraged plaintiff to keep his appointment with Dr. Dopf to see whether he would benefit from surgery.  AR 300, 306.

On November 2, 2010, plaintiff saw Dr. Eugene Kaji, a cardiovascular specialist, who diagnosed "likely coronary artery disease" following an abnormal stress test.  AR 273-79.  A physical examination showed that plaintiff had full range of motion in his large joints and full strength (five out of five) in his upper and lower extremities.  AR 275.  The following

3

day, plaintiff underwent outpatient cardiac catheterization.  The diagnosis was two-vessel occlusive coronary artery disease.  A bare metal stent was implanted to the left circumflex. AR 367-68, 387-88.  Two more stents were placed on November 11, 2010.  AR 409-10, 457.

On November 24, 2010, plaintiff saw a physician's assistant in Dr. Dopf's office who noted that plaintiff described pain between his shoulder blades, under his left arm and into the triceps and elbow.  Plaintiff also had numbness and tingling from his left elbow to his middle finger.  A physical exam showed muscle atrophy and strength of four out of five in plaintiff's left triceps.  Although plaintiff experienced some pain relief with medications, his symptoms had not yet subsided.  The physician's assistant noted that plaintiff had not sought other forms of conservative treatment because he was dealing with other health problems. AR 457.  An October 8, 2010 magnetic resonance imaging study showed a large intraforaminal disc herniation at C6-C7 impinging on the C7 nerve root, which the physician's assistant noted matched up with plaintiff's symptoms and physical exam.  AR 458.  Plaintiff was not a candidate for surgery or epidural or nerve root injections at the time of this appointment because he was on Plavix until the end of January 2011.  However, the physician's assistant noted the likelihood that he would be a good candidate for surgical decompression of his cervical spine if "nonoperative management" failed.  If cervical fusion were necessary, plaintiff would have to be nicotine free.  Plaintiff was referred for physical therapy and an increased dose of gabapentin, which is used to treat nerve pain.  AR 458.

On December 29, 2010, plaintiff saw a physical therapist and reported that he had

pain in his upper back between the shoulder blades but that his elbow had not been bothering him much.  The physical therapist noted that plaintiff's cervical range of motion and extension were painful and restricted.  AR 525.

On January 12, 2011, plaintiff returned to Dr. Dopf's office for a followup appointment for his neck and left arm pain.  AR 577.  Plaintiff expressed his interest in having surgery after he finished taking Plavix for his cardiac condition at the end of January 2011.  Although he was still smoking, he planned to quit.  AR 577-78.  He was not interested in steroid injections.  Plaintiff was told that because he had long-term symptoms and weakness, he might have permanent nerve damage.  AR 578.

Also in January 2011, plaintiff saw Dr. Mozena for a followup visit.  AR 583. Plaintiff reported continuing upper back pain that worsened in the afternoon when the morphine wore off and some fatigue and lack of energy caused by depression.  Although plaintiff stated that he experienced occasional episodes of chest pain twice a week with increased exertion, his pain was gradually getting better and responding well to medication. His shortness of breath had improved and his pulmonary function tests were essentially normal.  Plaintiff reported missing some cardiology appointments because of financial difficulties.  AR 583-84.

At a February 14, 2011 cardiology visit, plaintiff reported occasional chest tightness (particularly when under stress) and pain in his upper back.  AR 806.  He stated that his problems with shortness of breath had improved somewhat, but the doctor stated that his functional capacity was below normal for his age because of deconditioning and limitations

from his lower back pain.  Dkt. #10-4, AR 809.  Plaintiff was told to exercise and modify his diet.  AR 807.

On February 28, 2011, Dr. Dopf told plaintiff that even though he continued to have pain in his left neck, upper back and left arm, he could not have surgery until he was smoke free.  Dr. Dopf expressed his doubts that plaintiff would be able to remain nicotine free.  AR 604-06.

On May 23, 2011, plaintiff reported to a psychologist that his neck and arm pain had ranged from a two to a nine out of ten in the past month and that it increased with almost any position or physical activity.  He also reported that his medication caused headaches that lasted several hours.  AR 803.

On June 15, 2011, plaintiff saw a nurse for increased pain in his left shoulder and neck area.  Although he stated that his pain had been controlled for several months with morphine and vicodin, the pain became worse a week before the appointment.  AR 640.  Dr. Mozena increased the dosage of plaintiff's medications and referred him for a steroid injection.  AR 641.

Dr. Mozena completed a residual functional capacity questionnaire for plaintiff on August 31, 2011.  AR 789-92.  He noted that plaintiff had upper back, neck and radicular pain that limited motion in his left shoulder, arm and hand.  Specifically, Dr. Mozena assessed the following limitations:

- Sit and stand for only four hours at a time.

- In an eight-hour workday, sit for six hours and stand and walk for four

hours.

- The need to shift positions at will.

- Lift up to 10 pounds occasionally.

- Significant limitations in grasping, twisting, turning objects, fine manipulation and reaching on the left side.

- Absent from work more than twice a month.

At an October 11, 2011 urgent care visit for tooth pain, plaintiff reported that his pain medication was not as effective as it had been in the past for his upper back and neck pain.  He stated that a nerve block in his neck gave temporary relief for his left elbow and forearm pain and numbness.  Plaintiff was waiting for a second opinion regarding spinal fusion surgery because he was still smoking.  AR 1142.  Later that month, on October 24, 2011, plaintiff reported to Dr. Mozena that his neck pain was "stable" and "controlled" with his current medications.  AR 1143.  Although plaintiff stated that he would like to pursue surgical correction, Dr. Mozena noted that it was not an option until he was smoke free.  Id.

During a March 7, 2012 office visit with Dr. William Petersen, plaintiff denied extreme fatigue but stated that he had mild nausea after taking his evening medications.  AR 1145.  He reported being off cigarettes for four weeks but the doctor noted a strong odor of tobacco, which plaintiff attributed to second hand smoke from his roommate.  AR 1145-46.

On September 12, 2012, plaintiff saw Dr. Mozena for pressure in the left side of his chest, which was different from the pain he had before the stents were placed.  Dr. Mozena noted that plaintiff was still smoking and was deconditioned; he could walk only 100 yards

7

before having to stop for shortness of breath and fatigue.  On examination, Dr. Mozena found that plaintiff had a full range of motion in his neck to the left and a slight reduction in rotation to the right, but he was able to extend and flex his neck fully.  Plaintiff's strength in his upper extremities was a five out of five.  AR 1147-48.

Plaintiff saw Dr. Mozena again almost a year later, on August 22, 2013.  Plaintiff reported that for the past two years, his symptoms were well-controlled with pain medications and a steroid injection but that his neck and arm pain had increased over the past several months.  He also reported having cramping in his left hand on two occasions and an ache in the left side of his rib cage.  Plaintiff attributed the increased pain to his part-time work at a rental car agency.  AR 1153-54.  Plaintiff stated that he declined surgery because he did not wish to pursue it.  AR 1153.  A physical examination showed that plaintiff had "exquisite tenderness" in his thoracic back, decreased range of motion in his shoulders and reduced rotation of the neck to the left.  Dr. Mozena recommended physical therapy and another steroid injection for plaintiff's neck and back pain and refilled his vicodin prescription for breakthrough pain.  AR 1155.  Dr. Mozena noted that it was likely that his symptoms would improve with these measures.  AR 1156.

On March 17, 2014, plaintiff reported to Dr. Mozena that he had been experiencing pain in his right hand, tail bone and left shoulder since falling down a flight of stairs at O'Hare airport in February 2014.  AR 1156.  A May 2014 magnetic resonance imaging study of plaintiff's left shoulder showed acromioclavicular capsular edema of the AC joint with possible indication of a low-grade AC separation injury and partial thickness tear of the

8

supraspinatus tendon and subscapularis tendon.  AR 1158, 1171.

On August 1, 2014, plaintiff reported to Dr. Mozena that he continued to have pain in his neck and upper back but that it was controlled with multiple pain relievers, including long-acting morphine and vicodin for breakthrough pain.  Plaintiff denied having side effects, such as constipation and sedation, from his pain relievers but stated that he felt depressed, was fatigued and had difficulty concentrating.  Plaintiff told Dr. Mozena that he had been approved for disability and asked him to complete a form for his attorney.  AR 1159.  A physical examination showed that plaintiff had full range of motion in his shoulders and could rotate his neck to the left and right, but pain limited abduction in his shoulders and his ability to extend and flex his neck.  AR 1161.

On August 31, 2014, Dr. Mozena completed a second residual functional capacity questionnaire, noting that plaintiff's neck pain was "stable" and radiated into his left shoulder, upper back and left elbow.  AR 1214.  Dr. Mozena wrote that plaintiff was limited in the following respects:  lift 10 pounds frequently but not more than 20 pounds occasionally; not sit without the option to stand or walk at will; stand and walk up to four hours in an eight-hour workday; use his left hands and fingers only 50 percent of the workday; not perform any reaching with his left arm; miss three days of work per month; and twist, crouch, squat and climb ladders only occasionally.  AR 1215-17.  Although the questionnaire asked about side effects from pain medication and fatigue, Dr. Mozena did not note any such problems.

An unsigned Department of Vocational Rehabilitation job development plan report

dated September 10, 2014, notes that plaintiff needs the ability to move when pain dictates, probably could not work more than 10 to 20 hours per week on a consistent basis and has memory problems and limited patience due to pain medications.  AR 1107.

## B.  Plaintiff's Testimony

At the hearing held on September 22, 2011, plaintiff testified that he could not work because he either has pain in his back and arm or takes his medications and cannot stay awake for eight hours.  He feels pain after sitting for 15 to 20 minutes.  AR 44.  He gets tired two hours after taking morphine and gabapentin and sleeps three or four times a day on those medications.  Plaintiff also stated that he gets winded easily from his heart issues and that the medications make him unable to concentrate or remember things.  AR 45-46.

On October 16, 2014, plaintiff testified that his biggest issues in 2010 were his neck and arm pain and "getting winded" because of his heart problems.  The shortness of breath improved but the medications he takes for pain make him feel "knocked out" every day.  For the first seven months he was on pain medications, he had to sleep every few hours.  Plaintiff testified that he learned to take his medications at different times so that he could stay awake most of the day, but he started having memory problems.  AR 898.  Plaintiff said that he can lift very light items and reach occasionally with his left arm but he tries not to use it at all.  AR 903.  Although surgery is a possibility, three different doctors have told him that it may not be worth it because he may have only a 50 percent chance of getting better.  AR 905-06.

OPINION

A.  Credibility

The administrative law judge found that plaintiff had the residual functional capacity to perform sedentary work with the following limitations:  the option to sit and stand at will; occasional rotation, flexion and extension of the neck; occasional reaching, handling and fingering on the left side; simple routine and repetitive tasks; occasional interaction with coworkers; and being off task 10 percent of the day in addition to regular breaks.  AR 833. Plaintiff testified that he stays awake for only a few hours at a time, sleeps three or four times a day, has "memory issues" and would be late for work and miss work several times a month.  The administrative law judge did not find plaintiff's allegations credible for the following reasons:

1.  Plaintiff had failed to show up for or cancelled several appointments.

2.  Plaintiff had not had the type of treatment or physical examination results one would expect given the alleged severity of his neck and left arm pain.

3.  Plaintiff was able to go on vacation in July 2011 and March 2014.

4.  With respect to plaintiff's coronary artery disease and pulmonary fibrosis, the record failed to show that plaintiff suffered from any significant fatigue for more than a few months after surgery or from other symptoms related to his coronary artery disease or pulmonary fibrosis.

5.  The record did not show that plaintiff complained of or experienced any side effects from his medications.

AR 834-36.  Although I agree with plaintiff that the first three reasons given by the administrative law judge are not well-founded, the administrative law judge reasonably

11

determined that the medical record does not support plaintiff's claims of disabling arm and neck pain, extreme fatigue or other side effects associated with his medications (reasons four and five).

Although the administrative law judge criticized plaintiff for missing several appointments and not seeking more aggressive treatment for his neck and arm pain, he improperly ignored plaintiff's explanations for these occurrences.  SSR 96-7P, 1996 WL 374186, at *7 (ALJs must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); Beardsley v. Colvin, 758 F.3d 834, 840 (7th Cir. 2014) (remanding to agency where ALJ made no attempt to determine reason for conservative treatment).  Plaintiff told Dr. Mozena in January 2011 that he missed some cardiology appointments because of "financial trouble." AR 584.  Craft v. Astrue, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ should consider claimant's "inability to pay for regular treatment and medicine").  In addition, many of the appointments that plaintiff missed were for gastrointestinal problems and not for problems related to his coronary artery disease, pulmonary fibrosis or neck and arm pain.  AR 609.

The administrative law judge noted that plaintiff did not seek even conservative treatment for the first five months after the onset of his neck, arm and elbow pain. However, the record makes clear that during that time period, plaintiff could not receive steroid injections or undergo surgery because he was recovering from the placement of the stents and taking Plavix. AR 458.  After he finished taking Plavix, plaintiff agreed to receive

a steroid injection, which gave him good relief.  Plaintiff has not been able to undergo surgery because he is unable to stop smoking.  At the 2014 hearing, plaintiff downplayed his smoking and said the "biggest issue" was that he was not sure that surgery would be effective. AR 907.  The administrative law judge faults plaintiff for making inconsistent statements about the reason he did not undergo surgery on his spine, pointing out that he continues to smoke even though he was told he needed to quit before he could undergo surgery.  The fact that plaintiff may have more than one reason for not pursuing surgery does not necessarily mean that he does not have a good reason for not pursuing surgery or that he was lying about his reason.  There is some evidence that plaintiff was told that even with surgery, his nerve damage may be permanent.  AR 578, 905-06.  Also, as I found in my order reversing the administrative law judge's 2011 decision, to the extent that the administrative law judge has concluded that plaintiff's symptoms cannot be as bad as he says they are if he refuses to do what it takes to get surgery (i.e., quit smoking), that is not a reliable basis on which to rest a credibility determination.  Shramek v. Apfel, 226 F.3d 809, 813 (7th Cir. 2000).

I also agree with plaintiff that it was improper for the administrative law judge to draw a negative inference from his ability to travel to Chicago on two occasions.  Although the administrative law judge wrote that plaintiff "went on a vacation since the alleged onset date," AR 836, plaintiff testified that he traveled to Chicago in 2014 to visit his brother who was dying of cancer.  AR 898.  (The record is silent about the purpose of plaintiff's 2011 trip to Chicago.)  In any event, the ability to travel from Wisconsin to Chicago twice in a three-year period does not amount to substantial evidence showing that plaintiff can work or that

13

his subjective complaints are incredible.  Lipke v. Astrue, 575 F. Supp. 2d 970, 981 (W.D. Wis. 2007).  See also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir.1986) (ability to engage in periodic, restricted travel does not diminish credibility of pain testimony).

Although the administrative law judge may have erred in drawing a negative inference from plaintiff's missed appointments, ability to travel and lack of certain types of treatment, his credibility determination was not "patently wrong."  Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010); Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009) (credibility determination need not be flawless); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the [administrative law judge's] determination lacks any explanation or support that we will declare it to be patently wrong.").  See also Schreiber v. Colvin, 519 Fed. Appx. 951, 961 (7th Cir. 2013) (unpublished decision) (credibility determination not "patently wrong" when court disagreed with one factor in ALJ's credibility finding but found ALJ "did not place undue weight" on this factor and "specified several valid reasons for finding [claimant] not credible").

Plaintiff says little to contradict the administrative law judge's finding that there is no evidence that he experienced continuing symptoms of coronary artery disease or pulmonary fibrosis for more than a few months after his surgery.  Although plaintiff notes that he reported in January 2011 that he had "occasional episodes of chest pain" twice a week, that progress note also states that plaintiff reported that his chest pain "seems to be gradually getting better since last visit" and that "SL nitro" provides good relief.  Id.  AR 584.  The record shows that plaintiff did not complain of or seek treatment for chest pain

14

after February 14, 2011, when he admitted that his shortness of breath had improved and stated that he was having occasional chest pain only with heavy exertion.

As the administrative law judge noted, plaintiff responded well to the placement of the stents and denied needing pain medications for his cardiac condition on November 12, 2010. AR 433. In a October 19, 2010 note, Dr. Mozena confirmed that plaintiff was not working because of his neck and arm pain and made no mention of plaintiff's heart condition or chest pain. AR 301. His January 2011 pulmonary function test was normal, AR 583-84, and in September 2012, Dr. Mozena attributed plaintiff's shortness of breath to deconditioning. AR 1145-48. Although plaintiff reported "chest pressure" in September 12, 2012, he stated that it was different from his previous pain. It was Mozena's opinion that the sensation was most likely associated with plaintiff's spinal problems and not his coronary artery disease. AR 1147-48. Accordingly, the administrative law judge's conclusion that plaintiff did not have disabling symptoms associated with his coronary artery disease and pulmonary fibrosis a few months after his cardiac surgery is well-founded.

The administrative law judge is also correct when he notes that plaintiff reported on more than a few occasions before October 2014, that his neck and arm pain was controlled with medications and injections. Although plaintiff had a few flareups of pain between the end of 2010 and 2014, he experienced relief when Dr. Mozena adjusted his pain medications. For example, on November 29, 2010, plaintiff reported that his pain was tolerable during the day but that he woke at night with "pain episodes." AR 550. In response, Dr. Mozena prescribed long-acting morphine, AR 552, which plaintiff later

15

reported as being effective.  On June 15, 2011, plaintiff stated that his pain had been controlled for "several months" with morphine and vicodin, although the pain became worse a week before the appointment.  AR 640.  Dr. Mozena again increased the dosage of plaintiff's medications and referred him for a steroid injection. AR 641.  When plaintiff saw Dr. Mozena on October 24, 2011, he reported that his neck pain was "stable" and "controlled" with his current medications.  AR 1143.

Plaintiff had only a few visits to the doctor during the next two years and did not report having pain in his neck or arm.  On August 22, 2013, he confirmed that his symptoms had been well-controlled with pain medications and a steroid injection for the past two years, even though his neck and arm pain had increased over the past several months while he was working at a rental car agency.  AR 1145-55.  Almost a year later, on August 1, 2014, plaintiff reported to Dr. Mozena that his neck and upper back pain was controlled with multiple pain relievers, including long-acting morphine and vicodin for breakthrough pain.  AR 1159.  These progress reports are consistent with plaintiff's testimony in 2011 that he either had to take pain medications or have pain in his back and arm, which suggests that his pain is controlled with medication.  AR 44.  (I address below plaintiff's contention that his pain medications caused him severe side effects.)

The administrative law judge also correctly noted that except on a few occasions, plaintiff's physical examinations have shown that he has intact sensation, reflexes and motor strength in both extremities.  Plaintiff disputes this and points to records from 2010 showing that he had radiculopathy, muscle weakness and atrophy on the left, decreased hand grip and

difficulty abducting his shoulders (moving them away from the body) past 90 degrees. Although it is clear that plaintiff has limitations in his left upper extremity, which the administrative law judge accounted for in his residual functional capacity assessment, the medical record does not support plaintiff's claims that he has little to no use of his left arm. A November 2, 2010 physical examination showed that plaintiff had full range of motion in his large joints and full strength (five out of five) in all of his upper and lower extremities, AR 275, and a November 24, 2010 physical examination showed plaintiff had strength of four out of five in his left triceps. AR 457. On September 12, 2012, Dr. Mozena found that plaintiff had full strength in his upper extremities. AR 1147-48. Although plaintiff had limited abduction on August 1, 2014, he had a full range of motion in his shoulders. AR 1161.

Plaintiff's biggest complaint seems to be that his medications cause him extreme fatigue and memory problems. Contrary to plaintiff's assertions, the administrative law judge addressed these problems and considered the side effects of plaintiff's medications. He found that plaintiff did not report any disabling side effects to his treating physicians, stated that he had only "some fatigue" in January 2011, AR 583-84, and denied having extreme fatigue in March 2012. AR 1145. The medical record shows no evidence of the severe fatigue and memory problems that plaintiff describes. On August 1, 2014, he reported feeling depressed, being fatigued and having difficulty concentrating; however, he specifically denied having side effects from his pain relievers. AR 1159. Although Dr. Mozena wrote that "opiates can cause sedation" on an August 2011 functional capacity

questionnaire, he did not note that plaintiff was experiencing any such side effects and did not list fatigue as one of plaintiff's symptoms, even though the form specifically asked about it.  AR 789-90.  Dr. Mozena also did not mention fatigue or side effects on the 2014 questionnaire that he completed.  AR 1214-17.  Further, at the 2014 hearing, plaintiff testified that his fatigue lasted only for the first seven months that he was on pain medications, after which he learned to take his medications at a different time of day to prevent this from happening.  AR 898.  Although plaintiff and other witnesses testified about memory problems that plaintiff experienced while on pain medications, the administrative law judge noted correctly that plaintiff had not claimed disability on the basis of any mental impairment or cognitive difficulty and none of his physicians assessed any limitations in these areas.

In sum, although the administrative law judge's credibility determination is not perfect, he gave well-founded reasons supported by substantial evidence in the record for his conclusion that plaintiff's symptoms were not as severe as he claimed.

## B.  Treating Physician

It is a well-settled rule that a treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). Although an administrative law judge is not required to afford a treating physician's opinion

controlling weight, he is required to provide a sound explanation for rejecting it.  Roddy, 705 F.3d at 636.  See also Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor.").

On August 31, 2011, Dr. Mozena found plaintiff capable of sedentary level work with significant limitations in grasping, twisting, turning objects, fine manipulation and reaching on the left side.  Dr. Mozena also found that plaintiff needed the option to shift positions at will and miss work more than twice a month.  Three years later, on August 31, 2014, Dr. Mozena reached a similar conclusion regarding plaintiff's abilities, except that he specified that plaintiff could use his left hands and fingers only 50 percent of the workday, could not perform *any* reaching with his left arm and would miss three days of work per month.  Dr. Mozena also added the limitation that plaintiff could twist, crouch, squat and climb ladders only occasionally.

Although the administrative law judge limited plaintiff to occasional reaching, handling and fingering on the left side, he declined to adopt more significant limitations in these areas as a result of Dr. Mozena's opinion and did not adopt the physician's restrictions related to plaintiff's absences from work and limited ability to twist, crouch, squat and climb. The administrative law judge gave several reasons for not crediting Dr. Mozena's opinion in full.  First, he explained that Dr. Mozena had seen plaintiff only one or two times a year since 2010 and relied only on plaintiff's subjective opinions that he had to miss work and was limited in his ability to reach, twist, crouch, squat or climb ladders.  Plaintiff says very

19

little to dispute this finding, arguing that all progress notes contain "a component of subjective complaints" and that Dr. Mozena made some findings on a few occasions about his neck and left arm and hand after physically examining him. Dkt. #12 at 27. However, as the administrative law judge pointed out, most of the medical progress notes related to plaintiff's neck and arm (as discussed above) reported that plaintiff had full strength and good range of motion in his shoulders and upper extremities.

Plaintiff faults the administrative law judge for not explaining why he found that plaintiff could not perform any overhead reaching in 2011 but concluded in 2014 that he could perform occasional reaching on the left side. He argues that neither limitation is consistent with the fact that a September 12, 2012 physical examination showed that plaintiff had pain with "abduction after 90 degrees." AR 1148. With respect to reaching, the administrative law judge states that he "added additional limitations in the residual functional capacity, including . . . expanding the manipulative limitation from occasional . . . overhead reaching (with the left arm/hand) to also including reaching (in all directions)." AR 836. As plaintiff notes, in his 2011 decision, the administrative law judge actually found that plaintiff was precluded from overhead reaching with the left non-dominant arm. AR 25. However, it seems that the administrative law judge believes that limiting plaintiff to occasional reaching in all directions is a more restrictive limitation than finding that he is not capable of any overhead reaching. Plaintiff does not offer any reason why this would not be true. In addition, Dr. Mozena did not find that plaintiff was precluded from overhead reaching until August 2014. In his August 31, 2011 opinion, Dr. Mozena stated only that

plaintiff had "significant limitations" in reaching on the left side.  The administrative law judge's most recent residual functional capacity assessment is consistent with that finding. Although there is some evidence in the record that plaintiff had difficulty abducting (lateral lifting) his left shoulder above 90 degrees, the vocational expert testified at the hearing that she limited her examples to jobs requiring reaching directly in front, which a person could do occasionally with only one arm.  AR 938.

In a confusing argument, plaintiff contends that Dr. Mozena did not rely exclusively on plaintiff's subjective complaints because a September 2014 Department of Vocational Rehabilitation job development plan contained notes and restrictions consistent with Dr. Mozena's opinion.  AR 1107-35.  However, that report is unsigned and like most of Dr. Mozena's opinion, appears to have been based on plaintiff's subjective complaints. Moreover, the DVR plan was issued after Dr. Mozena had given both of his opinions, so it is unlikely he could have relied on it.  (Plaintiff also devotes a substantial portion of his discussion to what he describes as the administrative law judge's improper reliance on plaintiff's daily activities.  I will not address this argument because in his most recent opinion, the administrative law judge did not mention plaintiff's daily activities or identify them as a reason for not giving greater weight to Dr. Mozena's opinion.)

Second, the administrative law judge correctly noted that Dr. Mozena did not explain why plaintiff would be limited in his ability to twist, crouch, squat or climb ladders, in light of the fact that all of these activities involve the lower extremities, which are not affected by plaintiff's medical impairments.  Although plaintiff seems to dispute this finding, he fails to

develop any meaningful argument and again refers to the Department of Vocational Rehabilitation plan.

Third, with respect to absences from work, the administrative law judge noted that there was no evidence that plaintiff had regular flare ups, uncontrolled pain or remained off task more than 10 percent of the workday.  Plaintiff disputes this by summarizing his medical appointments, during which he sometimes reported having pain.  However, as discussed in the context of the credibility determination, plaintiff generally reported that his neck and arm pain was controlled with medications and injections.  Although he did complain of pain on a few occasions between the end of 2010 and 2014, he reported experiencing relief when Dr. Mozena adjusted his pain medications or referred him for a steroid injection.  Although the administrative law judge did not explain why he limited plaintiff to being off task 10 percent of the workday, the vocational expert explained that this restriction did not affect her testimony about available employment because every person is off task 10 percent of the time and it has no significant bearing on a person's employment.  AR 945-50.

Fourth, the administrative law judge noted that Dr. Mozena made his August 2014 findings (including the no reaching and lower extremity limitations) in the context of plaintiff's report that he had already been found disabled and just needed a form to send in from his doctor.  AR 836-37.  Plaintiff contends that this is "flawed reasoning" because "it was noted that additional time was spent completing paperwork for vocational rehabilitation."  Dkt. #12 at 27 (citing AR 1149).  Plaintiff's argument is difficult to

understand, but he seems to be saying that Dr. Mozena understood why plaintiff needed an assessment of his limitations. However, the progress note cited by plaintiff was dated September 2012, two years before Dr. Mozena issued the 2014 opinion. The progress note associated with Dr. Mozena's August 2014 findings states that

> He continues to work a small amount periodically, but has been granted disability through ssi per his report. He brings a form with him to be completed, this is for his lawyer, unclear as to what he has retained a lawyer for, seems that this is in regards to ssi disability, but he also reports that this has already been approved.

AR 1159. Accordingly, it was not unreasonable for the administrative law judge to conclude that in August 2014, Dr. Mozena may have followed plaintiff's subjective complaints rather than providing a medically-based opinion. AR 837.

In sum, I find that the administrative law judge provided good reasons for not adopting all of the restrictions assessed by Dr. Mozena.

## C. Vocational Expert Testimony

The vocational expert determined that a person with plaintiff's residual functional capacity could perform jobs as a machine tender, office worker and video surveillance monitor and identified the corresponding numbers in the Dictionary of Occupational Titles for each job. AR 941-42. "Under SSR 00–4p, . . . the ALJ has an affirmative responsibility to ask if the [vocational expert]'s testimony conflicts with the [Dictionary of Occupational Titles], and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009). Plaintiff contends that the vocational

expert's testimony regarding the machine tender and office worker positions conflicts with the <u>Dictionary</u> because the <u>Dictionary</u> defines those positions as requiring frequent, bilateral reaching, handling and fingering and the administrative law judge found that he was capable of only occasional reaching, fingering and handling on the left side.

Although defendant agrees that work as a machine tender and office worker requires frequent reaching, she argues that the administrative law judge specifically asked the vocational expert about the reaching requirement and that the vocational expert provided a reasonable explanation that the administrative law judge could rely on.  I agree.  At the hearing, the administrative law judge asked the vocational expert whether her findings would be consistent with the <u>Dictionary</u> and she responded that they would be.  AR 935.  After posing one hypothetical question involving an individual capable of light work limited in part by occasional reaching in all directions with the left non-dominant hand, the vocational expert testified that the individual could perform work as a bench assembly worker, office helper, food preparer and counter clerk.  AR 936-37.  The administrative law judge then asked the vocational expert how the <u>Dictionary</u> dealt with reaching requirements, and the vocational expert explained that because the <u>Dictionary</u> addresses reaching with both hands, she had limited her examples to jobs requiring reaching directly in front, which a person could do with only one arm.  AR 938.  She also testified that even though all of the jobs except for counter clerk required *frequent* reaching, a person limited to occasional reaching on one side could perform them because none of the jobs require reaching in several directions and the person could perform any required reaching with the dominant hand and

arm. <u>Id</u>.

Plaintiff points out that the vocational expert offered her explanation in response to jobs identified at the light exertional level and not did not testify specifically about sedentary jobs requiring frequent reaching. However, plaintiff fails to note why this would make a difference and does not develop the argument in a meaningful way. Both the administrative law judge and the vocational expert made it clear after the first hypothetical that they were aware of the general conflict between a job requiring frequent bilateral reaching and a limitation of occasional reaching on one side. A review of the hearing transcript shows that the administrative law judge did not limit his question about reaching to light work and the vocational expert answered in general terms with respect to the <u>Dictionary</u> as a whole.

Plaintiff also states that "it is hard to see how someone with occasional [] handling and fingering to one side could perform a job that requires frequent [] handling and fingering." Dkt. #12 at 32. However, plaintiff cites no authority showing that the positions of machine tender and office worker require frequent handling. In addition, the vocational expert testified that these positions would not require more than occasional handling and fingering. AR 939-42.

Plaintiff contends that the vocational expert offered vague and unsupported testimony that having to be off task 10 percent of the time would not have any impact on a person's employment. In response to questioning by plaintiff's attorney, the vocational expert explained that being off task 10 percent of the workday did not affect her testimony because every person is off task 10 percent of the time and it has no significant bearing on a person's

employment.  AR 945-50.  She explained that "[a]ll the research on students and workers" shows that "[e]mployers do not keep track of who's on task . . . [b]ut they do keep track of production" and "usually if you are off task 15 percent of the time or more . . . you might have trouble producing as much as the other average workers."  AR 945-46.  Plaintiff did not question the vocational expert further at the hearing about the basis of her opinion and fails to offer any reason why the administrative law judge should not have relied on the vocational expert's testimony.

Finally, relying on statements made in dicta by the Court of Appeals for the Seventh Circuit, plaintiff criticizes the vocational expert for not identifying an official source for the number of jobs in each job classification she identified from the Dictionary.  Voigt v. Colvin, 781 F.3d 871, 879 (7th Cir. 2015) ("[T]he ALJ fully credited the VE's testimony . . . even though the testimony did not explain the source of the expert's estimate of the number of jobs that [plaintiff] could perform."); Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014) ("There is no official source of number of jobs for each job classification in the DOT, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general, and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy.").  However, as defendant points out, despite these criticisms, the court of appeals did not hold in either Voigt or Browning that the administrative law judge erred in relying on the unexplained vocational testimony and did not overrule well-established precedent allowing administrative law judges to do so.  Id.  See also 20 C.F.R. §§ 404.1566(d) and (e), 416.966(d) and (e) (ALJs may rely on vocational

26

expert testimony at step five and must take administrative notice of "reliable job information," including the Dictionary).

Although recent court of appeals cases suggest that no vocational expert opinion can be relied upon until the Social Security Administration or some other federal agency undertakes an update of the Dictionary of Occupational Titles or creates an acceptable substitute, the court has not yet overturned an administrative law judge's denial of an appeal on that basis alone. Brown v. Colvin, case no. 14-cv-894-bbc, 2015 WL 7294547, at *7 (W.D. Wis. Nov. 17, 2015). Similarly, in remanding administrative social security decisions on other grounds, this court has cautioned administrative law judges about the concerns raised by the Court of Appeals for the Seventh Circuit, but it has not reversed on this ground alone. E.g., Quinnell v. Colvin, case no. 14-cv-601-bbc, 2015 WL 2371513, at *7 (W.D. Wis. May 18, 2015) (advising that on remand, ALJ should question vocational expert more thoroughly about basis of opinion regarding number of jobs plaintiff might be able to perform). As this court held in Brown, 2015 WL 7294547 at *7, it would make no sense to overturn the decision in this case in which the record shows that plaintiff is capable of performing a limited range of sedentary work in the jobs identified by the vocational expert. Cf., Voigt, 781 F.3d at 877 (plaintiff plagued with psychiatric problems that sometimes resulted in "explosive behavior," which would not "augur well for success as a security guard"); Herrmann v. Colvin, 772 F.3d 1110, 1111 (7th Cir. 2014) (plaintiff suffered "assemblage of impairments" affecting many aspects of her functional capacity). It was not unreasonable for the administrative law judge in this case to rely on the vocational expert's

27

identification of a range of sedentary work that a person with plaintiff's physical restrictions could perform, particularly when it does not require a vocational expert to observe that the kinds of jobs identified exist throughout the community.

ORDER

IT IS ORDERED that plaintiff Matthew Fitzgerald's motion for summary judgment, dkt. #11, is DENIED.  The decision denying plaintiff benefits is AFFIRMED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 4th day of February, 2016.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge